Good morning, your honors. My name is Kristi Unger. I know there was a bit of a mix-up. We were expecting Ms. Gannett today. I apologize for that. In any event, my name is Kristi Unger. I represent the appellant Berberena. I think we approved your argument. You did, yes. I think there was an appearance form that was given. I represent the appellant Berberena in Yale in this matter.     Ms. Unger. Ms. Gannett. Ms. Unger. Ms. Unger. Ms. Unger. Ms. Unger. Ms. Gannett.           Ms. Unger.  Ms. Unger. Ms. Unger. Ms. Unger.    that? Ms. Gannett. Ms. Gannett. Alternative, female defense counsel isual County court. The National Court of Appeasement. Ms. Unger.  Yes, ma'am. I will thank the NPR, and others, for a little bit of the intent of this event, just to invite this message to County court so they know what happened. I'm going to start with the first one, which is the way that we're interpreting whether and to what extent under section 994U, the court can determine how its guideline is going to be applied retroactively. My position is there's a significant difference between determining eligibility, where in this case we know the condition has said it's determined whether and to what extent. It said 2B1.1, the amendments are going to be retroactive, and we're going to make them retroactive to everyone sentenced under the guideline. And it's a full, it's fully retroactive, the full amount of the reduction. What they're actually doing, then, is appellants are eligible for a reduction, and they're going back into these proceedings, but the commission is limiting the discretion of the district court judge. And not like Congress said that they are to determine the range and the amount by which the sentence can be reduced. And Congress has said they should do that, almost authorizing them to establish what we might think is a mandatory minimum when you come right down to it. But didn't Congress say, thou shalt do that? And didn't Congress also say the policy statement shall be binding? So what theory? That's two separate questions. And for purposes of this, let's, our separation of powers argument, at least the legislative portion, contests whether it should be binding or whether it can be. But, yes. So I stopped you right there since you touched on separation of powers. I'm confused, and I won't surprise my colleagues. How is separation of powers an issue at all here? I think of separation of powers, and maybe I'm wrong, as implicating the separation of powers between the three branches of government. How is separation of powers an issue when you're talking about the acts of an agency or a commission? Aren't we really talking? That's part of the judiciary. Yes. Aren't we really talking about whether or not the commission has acted outside the delegation of authority and therefore is going beyond the authority that's been given to them? And if that's correct, that's not a separation of powers issue, is it? I think this will clarify, but basically my argument has three pieces to it. And the first piece is exactly what Your Honor just identified, that they're stretching outside of their 994U authority, and they're also violating the mandate under 991 that they effectuate the purpose of sentencing and assure a fair and individualized sentence. What is the violation of 994U? Because, as I said, maybe I didn't explain. I'm making a distinction. It's more than a semantic distinction. Under what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced? Absolutely. And my position is that that authority relates to the guideline that has been amended. And what the commission is doing is they're not saying people who were sentenced below the guideline, people who were sentenced after Kimbrough, are not eligible. They made everyone eligible, but they're going back in to another element in this equation and they're saying to a district court judge who looked at a different 3553 factor and saying, you have to sentence this client, or excuse me, this defendant, the exact same way that you sentenced another client, even though you felt that that sentence would not, you felt a guideline sentence was not appropriate at the time you sentenced him for a reason underrated to what is under the commission's authority. But when Congress decides, okay, we'll allow a change to crack cocaine, but we need it to be within certain bounds. And then under U they say it specifies what circumstance by what amount the sentences may be reduced. It doesn't say the guideline range. It says the sentences. So Congress is almost saying, look, but enough is enough. There is, we're going to let the sentencing commission figure out how far this goes. And that's what they did. I think maybe what I'm not explaining is that power has to relate to the commission's authority over the guidelines. Let's go into the authority, which to me, if you have an argument, it would have to be under that. But why does the commission have the authority to do what you like, but doesn't have the authority to do what you don't like? So you're asking me why subsection C would be valid outside of, well, our position on this is that it does not have the same, it doesn't, subsection C is strictly about 2D1.1, the amended guidelines that the commission has amended. And subsection C is also entirely discretionary with the district court judges. It's actually a real policy statement. It says this is how we're interpreting this amendment. It's within the district court's discretion if it would like to approve it. In other words, C leads it to the judges, U takes it away from the judges. Well, or in subsections A and B, the limitations on reiterating the same sentence. But doesn't the commission have the authority to do that? The Sentencing Reform Act, and specifically 991 and 994, gives the commission authority over the guideline, over the guideline that it has amended. It doesn't have the authority to reach outside of that and tinker with the district court's balancing of the 3553 factors. But it comes down to an interpretation of you, don't we? It really does, absolutely. And I just think there's a distinction between, like a fundamental difference between determining that someone is or is not eligible and then reaching into the district court's implementation of a sentence that it thinks is proper where the guideline is only one factor. Could not Congress have said under you, and in so doing, the commission can set a mandatory minimum for such crimes given their dangerousness to society? I mean, couldn't it have said that? Well, Congress certainly could have said that. I don't know, I mean, it's not in the statute either. It's specified by what amount the sentences may be reduced. Well, Congress would be 1.10 before it, before it became effective. And effectively, you've got a mandatory minimum in there. I'm sorry, can you say that again? Under the B section, you've got a mandatory minimum. Under subsection B of 1.10? Yes. Well, that's what I'm... And Congress had that before. They could have stopped it. But they have. But this is the commission, in my reading of 994U, reaching outside and also, as I said, directly contradicting the purposes that it's supposed to... Well, they're operating on a clean slate here. We've got Dillon, we've got Doe, we've got Mistretta, we've got Horne that you graced us with last week, the Sixth Circuit opinion was devastating for your separation of powers argument. We've got a lot of case law out there. So what happens if we decided these issues most of them are new? Absolutely. The one thing I would point out is none of those cases deal with this new language that is sort of... that is the crux of my exceeding authority. And likewise, none of them deal with the encroachment on judicial authority, which is also based on the new language. The language that takes away the district court's ability to vary proportionally or depart proportionally again. I would agree with you that the separation of powers issue, which is based on 1B1.10 old and new, it was specifically not addressed in Dillon. It was raised by Justice Stevens in his dissent. And I do acknowledge that that's a much harder issue for us. Explicitly not reached. With the case law that's emerging, it's a much harder issue for us. But none of these cases touched on what the commission is doing here, which is clearly, you know... It's an angry run around Booker. They found a way to say to the district court, you're not going to blow our guidelines. We're making them mandatory. If there's one thing that's clear in Dillon, it is its emphasis on the limited nature of what can be done to a final sentence. Absolutely. And that's very much part of my point. Dillon was talking about not being able to vary any further. But don't you want to do, essentially, unrelated aspects of what is before a court? Don't you want to do them over or do them again? Do the departure again? Is that consistent with the limited nature of what Dillon will permit? It's not a new sentencing. It's not a new sentencing. And I absolutely think that that supports our argument. It allows the insertion of this one changed element into the sentencing equation, which has a whole lot of other factors that are coming into play that only the district court knows how that sentence was balanced out. And Dillon absolutely supports that, that this is a minor exception to an otherwise final sentence. And when the sentencing commission takes it upon itself to say, well, you can only go down to the bottom of our guidelines. Our guidelines are now mandatory. That is taking the judge's discretion away. It is changing the structure of the sentence as it was originally imposed. I see my time is up. We'll hear from you on recall. Thank you. Good morning, your honors. We have pleased the court. My name is Bernadette McHale and I represent the government in this matter. I think Judge Smith hit the nail right on the head. The issue here is whether the commission had the authority to set a limitation on the extent of the reduction, also to define the category of prisoners who are eligible for a reduction. And the answer to that question is a resounding yes. Isn't it possible, though, that in the resentencing, that the minimum would require a sentence that's higher than the previous sentence? Let's say the sentence was 120 with the variances and then you come back and the minimum that's set by the commission is 140 and there is indeed no reduction and the variances that may be extremely compelling are simply not taken into effect. I mean, Congress, it seems to me, and the commission were trying to set a regime that had some certainty to it because variances had been granted before based upon crack cocaine. But where the variances, as in this situation, are not based on that, they're based upon other factors, don't we have a certain arbitrariness here to say, oh, well, this is going to be the base sentence, even though it takes no account of the variances and, in fact, is not the reduction. Is that really what Congress intended? Yes, it did. I think Congress fully intended that because of the limited nature of the relief available under 3582C. But is not Benjamin Dell right that effectively the commission is directing courts to alter a part of an aspect of the final sentence that is unrelated to the amendment? Oh, I totally disagree with that proposition, Your Honor. I don't think it affects the original sentence or it does a part of the sentence. It simply sets a limitation and defines the category of prisoners who are eligible for a reduction. It takes away a variance. It takes away an aspect, as Judge Barry said, of the previous sentence, which could be a 15-month variance because of 3553 factors. And the provision says, shall leave all other guideline application decisions unaffected under the statutory provision. It does say that, but, Dillon, it's perfectly clear. That's only Part 1 of Step 1. The next step is you have to go to Section 1B.1.10.B.2 and apply the limitations and exceptions. Dillon says that. It says these limitations, 1B.1.10.B.2, constrains the extent of the reduction. Dillon has told us that. There is nothing different about the scenario here today than that scenario with Dillon. Well, except it's mandatory. Dillon was decided when it was not mandatory. Isn't that correct? No, Dillon rejected the claim that Booker rendered the 1B.1.10 advisory. That's a recent decision. The only difference between that case and this case is that in Booker and in Dillon, they were considering whether or not the limitation that precluded the reduction below the bottom of the amended guideline range was binding in lawyer Booker. And they said absolutely not. And their analysis is very pertinent to the analysis that the Court should perform here, which is, number one, Congress has said, has told the Commission that they have the authority to determine in what circumstances and to what amount of reduction should be granted. Number two, 3582C.2 itself, they said, sets forth a two-step process. Step one, first you make sure it's consistent with 1B.1.10. Then you go to the 3553A factors. They don't have to give any reduction at all. They don't have to give any reduction at all. I think one of the problems we're having here is that it's very clear where 3553A comes in to a sentence modification proceeding. It only comes in after the Court has determined they're eligible because it lowers the guideline range. Number two, they're also eligible because it's consistent with the policy statements. If the limitations and exceptions in the policy statements say you're not eligible, you don't go to step three, which is, okay, let's look at the 3553A factors. Dillon makes that process perfectly clear, as did the court in Doe. The court in Doe followed that same process and concluded there they rejected a challenge to the validity of 1B.1.10's definition of applicable guideline range and said, no, just because it narrows the scope of that term as it's used in 3582C.2 doesn't make it invalid. It's binding. So Dillon and Doe answer the question before this Court. Is there any other place in the guidelines, either the guidelines themselves or other policy statements, that set a bottom limit on what a court can sentence? I'm not sure about the other provisions of 3582C, Your Honor. This is an exception to the finality of the sentence. It's not a sentence. It's not a resentencing proceeding. It's not a sentencing proceeding. It is a limited relief. It's almost a gift. It's limited, exactly. I didn't want to use the term gift, but it is a gift. But it's not a gift if it's higher. It's not a gift if it ends up being higher. Then that defendant doesn't get the benefit. Dillon says it's a congressional act of lenity. Yes, it's a congressional act of lenity. And that's why, the bottom line is, Congress had the authority to set the... Congress gave the commission the authority to set the limitation. We can get strange results here. I'm not saying that's right or wrong. I would think that a worse offender has a greater chance of getting a reduction than a less serious offender. Because the less serious offender could have gotten a variance earlier, could have gotten an earlier reduction, the guideline range is lower. The worse offender, I don't know if that's the correct phrase, could get a greater reduction than the lesser offender. That could happen, but that could happen under other scenarios in the whole context of the sex modification proceeding. And I will point out that what this also overlooks, is that there are many, many defendants who were sentenced prior to Booker who weren't eligible for variances. None of those defendants then, under the scheme in place, would have the opportunity to get a variance. That's what Dylan rules. You can't go below that. You can't give a variance now. The same logic applies in this scenario. They are entitled, the commission was entitled and empowered to set the limitations. They did so within the confines of that power. Not only under 994U, but under 994A2, which says, the commission shall issue policy statements that concern the application of the guidelines and any other sentencing issue, including the appropriate use of the sentence modification procedure. Those two provisions, as pointed out in the case law, really solidify the point that this was a proper exercise of the commission's authority. What do you say to the argument that policy statements somehow escape the notice and comment provision and the fact that this is in a policy statement and it accomplishes this, there should have been some notification or something? On a practical level, I would point out that there was a notification of this. There's an argument made that it had to go through the APA. Well, it doesn't because it's a policy statement. I think they're just saying it wasn't adequate when it did. That doesn't advance the argument far at all. I think the bottom line is that the policy statements have always been issued in this manner and prior to Booker, policy statements were all binding. That's why Mistretta didn't address the issue before this court because Mistretta dealt with a mandatory guideline system. The separation of powers argument that was raised there was entirely different than the one raised here which seems to focus on does it impede on judicial  It does. 1B1.10 was given notice in a full day of hearing. Yes, it was, Your Honor. There were questions that were published. Obviously, the commission got a tremendous response because when they explained the rationale for their decision to limit their adoption for those who had received prior variants, they explained why. They said they had gotten a lot of comment on this and they were trying to avoid unwarranted sentencing disparities and also a lot of litigation was generated by this. They stated there not only did they give notice they may appropriately dealt with the information that they received back to suggest that there wasn't proper notice and of course, they weren't required to follow the formal APA procedures but they essentially did in this case. But there wasn't a hearing as to whether they should make the bottom line of the range mandatory. Was there, specifically they would do away with the discouraging aspect? Well, they did say that they wanted comments. They defined certain categories of defendants who might be eligible for a defendant. Then they quoted the current version, the old version which allowed for variation and said we want comments about how or whether we should impose limitations here. That certainly invited that response and obviously we got a lot. We got numerous responses with regard to the variance issue as was reflected in their statement as to the purpose of it. As to the separation of powers argument, I totally agree that that's not Is there a separation of powers issue here at all? No, there isn't, Your Honor. I mean, Mistretta answered the question as to the delegation aspect of the legislative function and the only other argument I believe that's currently raised is that it somehow impedes on judicial authority Is there any case off of that? I should ask that specifically of your adversary outside of the delegation slash non-delegation area, is there, can there be a separation of powers issue? I don't believe there can be, Your Honor. It was generally raised in the Ninth Circuit case in Fox because the argument was made there that it's acting like a guideline Well, the Sixth Circuit took a Sixth Circuit did an extensive analysis of the separation of powers argument, mentioned judicial and legislative and rejected it resoundingly That's correct. I just don't see that there's any merit at all to a claim that this is somehow an impingement on judicial authority. It's supposed to be a separation of powers between the different branches. This is all concentrated in the judicial branch And that's what Ms. Greta found I see you and Ms. Greta also argue Doe I hope you have other things in the interim besides this issue Yes, as a matter of fact, I'm going to allow my colleague, Mr. Zalzwer to handle the follow-up argument to Doe, which is Roe which takes place tomorrow which addresses the same issue Yes, I do get in here on other occasions If the court doesn't have any other questions then we'll rest on our feet Thank you Is this the same issue tomorrow? That's news to me I think that's the same issue Could we ask Ms. McCown, could you clarify what you mean? Roe being argued tomorrow is the same issue? It involves what we call the mandatory issue Roe has been sentenced to, his guideline range has been set by the mandatory minimum and he received a cooperation departure So that was the issue presented in Doe and now the Roe case has the, correct? Has the same fact pattern But it's a substantial assistance, so it can go below No, no, no Our position in the Doe court ruled is that when the guideline range is set by the mandatory minimum, even if there is a substantial assistant departure, there's no change in the applicable guideline range and therefore you're not eligible for a It's a different case It's the same case as the Doe case No problem, thank you We have three more coming in September Thank you Just a few points that I noted I wanted to come back on, particularly regarding the judicial separation of powers The case that I would point you to is Mistretta I mean, the concern there was also that the commission was going to be encroaching in the judicial realm, and one of the pillars of Mistretta is they will not be carrying out judicial function on a case they will not be having any impact on individual cases But that battle was lost at least as far as your argument is concerned As far as? The majority said that that was a proper delegation and since that time we know that the delegation is broad It's been acknowledged from the beginning in Mistretta and in Dillon and many other places It was proper to the extent that it was understood that the commission would not be acting in a judicial capacity and we're arguing that's what they're doing here by changing or altering aspects of individual sentences But what's wrong with Congress saying to the commission essentially you can set a minimum You know, we have the ability as Congress to set a minimum for an offense and we let the commission can decide that How is that a problem with separation of power? It's setting a minimum. That happens all the time, and of course it takes away the judge's authority to go below but that happens all the time Well, I mean a two part answer to that is first I don't think that's what Congress said to the commission here, which is part of my argument and the other part of that is I think if Congress were to say that you may have then a Dillon issue all over again because I mean I don't want to get into sort of the weeds of all that but that would be my position that that would be just overreaching on the part of the commission, but for what we're working with here, for the commission to say that is overreaching under the authority that Congress has given them I'll touch on Dillon. I know I mentioned this already but I want to reiterate that Dillon I think Dillon really supports our argument that you cannot go in, under the authority granted under 994U, which applies specifically to an amended guideline, the commission cannot then alter another aspect of the sentence I understand that the government feels, it's the government's position that this is a to what extent issue and there is a significant difference between the commission being able to say people who had variances are not eligible for sentence reductions and saying people, everyone is eligible but we're not going to let the district court do that way again let me see if there was oh just quickly the 3553A argument I think was a little bit confused with the government talking about it being at the second step, we're really talking about two separate 3553A weighing at the original sentencing the district court did a weighing and that's what we're impacting or what is being I'm not talking about the weighing that goes on once it's determined that someone is eligible for a reduction and then the court needs to consider factors in whether it should be, whether it should be granted if there's no other questions thank you, nothing further thank you very much, case is well argued under advisement, ask the clerk to recess court